**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEAST DIVISION**

| | | |
|---|---|---|
| **JIM R. BRUCE and KATHERINE F. BRUCE, individually and on behalf of others similarly situated,** | ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| vs. | ) ) | **Civil Action No.** |
| **CITY OF KENNETT, Nick Weatherwax, Roger, Wheeler, Kay Collins, Kent Freeman, and Kenny Wilson, individually and in their official capacities as members of the Kennett, Missouri City Council and its Public Safety Committee acting as Building Commissioner, Bob Hancock as former mayor and ex-officio member of the Public Safety Committee, Victor Mode, individually and as City Code Enforcement Officer, and Ross Farms Trucking, Inc.,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

## COMPLAINT

1.

## INTRODUCTION

This action is brought pursuant to 42 U.S.C. §1983 and pendent state law

claims for declaratory and injunctive relief, compensatory and punitive damages,

prejudgment interest, and attorney fees under 42 U.S.C. §1988.  It arises from the action of the  Defendants in causing the demolition of a residence owned by the Plaintiffs.  Plaintiffs contends that the demolition by the Defendants and their agents was taken in the complete absence of all jurisdiction where the individual members of the Public Safety Committee were City Council members assigned by ordinance to perform the executive functions of the Building Commissioner (hereinafter referred to as the Committee) such that any order for demolition was void and ineffective to authorize the demolition of any buildings or structures. (Missouri Constitution, Article 2, §1).

Plaintiffs assert the City of Kennett, Defendants Hancock, Weatherwax, Wheeler, Collins, Freeman and Wilson, and Defendant Mode (hereinafter referred to as municipal Defendants to distinguish them from Defendant Ross Farms Trucking, Inc.) failed to accord him his right to due process under the Fourteenth Amendment to the Constitution of the United States in that throughout the entire process he never received personal or constructive notice to repair or demolish his property from Defendant Mode or any other official or employee of the City. He was not informed of the decision by the Committee to demolish his property nor was he sent a copy of an final order of demolition. Plaintiffs further contend that it was the standard practice of the Defendant Mode to issue notices of code violations and orders to

repair or demolish buildings (also referred to herein as "declaration of nuisance") without stating specific facts and conditions that make a building or structure a dangerous building and the specific facts he relied upon in making his decision to order demolition or repair. Furthermore, his order did not identify or designate what repairs were required to make the building or structure conform to the municipal code. On information and belief, his orders and notices, including any notice directed to Plaintiffs were systematically and constitutionally inadequate to meet the fundamental requirements of due process of law under the federal and state constitutions and the City's own ordinances where the reasons given failed to state any facts to support his order, merely tracked the language of the ordinance, were vague, non-specific, and conclusory. Mode's notices are therefore constitutionally insufficient in that they simply state that the building has been determine by the City to be "unsafe" and "dangerous" and provide a citation to the governing ordinances. A subsequent notice employed simply informs a property owners of the date for a hearing and that the hearing has been scheduled to show cause why the building should not be ordered demolished. However those notices are likewise constitutionally insufficient in that they fail to state the specific or particular facts, conditions and circumstances which make a building dangerous or explain why it is detrimental to public health, safety and welfare. In the absence of proof of proper

notice and statement of facts, the Committee lacks the legitimacy, jurisdiction and competence to conduct pre-deprivations hearings, order an owner to close, secure, repair, demolish buildings or structures or grant any relief from Mode's determination and order for demolition.

## JURISDICTION

2.

The jurisdiction is invoked pursuant to 28 U.S.C. §1331, §1343 (3) and (4), and 28 U.S.C. §1367.

## PARTIES

3.

Plaintiff s Jim Bruce and Katherine Bruce are property owners and resident of the City of Kennett, Dunklin County, Missouri. They owns their home and other commercial and residential rental property in the City. They purchase real estate and remodel properties for rental and resale. Whenever reference is made to "Plaintiff" (singular) the word shall refer to Jim Bruce.

4.

Defendant City of Kennett, Missouri, is a Third-Class city located in Dunklin County, Missouri. It has established and operates Department of Public Safety which is responsible for code enforcement and property maintenance within the City. The

City may be served by serving the mayor of the City of Kennett at 200 Cedar St., Kennett, Missouri.

5.

At all times material to this action, Bob Hancock was the Mayor of the City of Kennett and an ex-officio member of the Public Safety Committee made up of members of the City Council appointed by him to act as the City's Building Commissioner. He had a duty under §77.350 R.S.Mo. to enforce compliance with the laws and ordinances for government of the city, to address any neglect of duties by City officials, and to act to prevent violations of the law by such officials.

6.

Defendants Weatherwax, Wheeler, Collins, Freeman and Wheeler were members of the Kennett City Council and appointed as members of the Public Safety Committee of the Kennett City Council, and, under the ordinances of the City, collectively designated as the "Building Commissioner" responsible for code enforcement and property maintenance ordering the demolition of buildings.

7.

Defendant Weatherwax was designated as the chairman of the Committee and purportedly responsible for conducting hearings involving demolition of dangerous buildings.

8.

Defendant Victor Mode the Code Enforcement/Property Maintenance officer responsible for making inspections of properties, and sending notices to property owners  stating their properties constituted nuisances or were dangerous structures and ordering them to repair or demolish their properties.  On information and belief, Plaintiff states that Mode issued a nuisance declaration and order requiring Plaintiff to demolish four of his houses.  By statute, Mode was also responsible for specifying the repairs to be made to houses or structures and stating the particular facts which make a building dangerous and detrimental to the health, safety and welfare of the residents of the City.

9.

Defendant Ross Farms Trucking, Inc. is a private corporation which contracts with the City of Kennett to demolish buildings determined by the Public Safety Committee, acting as Building Commissioner, to be dangerous structures.   Its president is at all times material to this action was David Ross. Once its bid for the work was accepted it carried out the demolition of buildings or structures designated by the City.  In this case Ross Farms Trucking, Inc. demolished four house owned by Plaintiff.  It was an agent of and joint participant with the City and acted at the direction of the Mode and the municipal defendants in carrying out the demolition.

## CLASS MEMBERSHIP

10.

Plaintiffs have also brought his action as a class action pursuant to Rule 23 (b)(1-2) F.R.Civ.P. for declaratory and injunctive relief. The members of their class consists of the following:

(A.)  All property owners whose houses, buildings, or other structures were demolished by the orders the City's Code Enforcement Officer and of the Public Safety Committee acting as the City's Building Commissioner and  had a special tax bills filed against their property for the costs of demolition and resulting clean-up.

(B.)  All property owners whose property has been demolished by the City in without being provided a sufficient notice  prior to a hearing stating the  particular facts and conditions and describing how they make the property dangerous and detrimental to public health, safety, and who have had special tax bills for the cost of demolition and cleanup filed as liens against their properties.

11.

The class is so numerous that joinder of all members as parties is impractical; the claims of Plaintiff are typical of the class, and as representative of the class, he will fairly and adequately protect the interests of the class as a whole.

## FACTS

12.

In 2016 Jim R. Bruce was the owner of a four houses located at1628 Wimberly St., 301 and 305 Lelia Dr. and 509 South Vandeventer St. in the City of Kennett, Missouri.  He and his wife Katherine also owned a home and other rental property in the City.  The four houses houses were unoccupied at the time and in the process of being cleaned up,  repaired and remodeled as rental units.

13.

The houses were structurally sound and posed no threat to public health, safety or welfare of the residents of the neighborhood or of the City.

14.

At all times material to this action Plaintiffs lived in Kennett, Missouri.

15.

Plaintiff is and was at all times material to this action  attorney who maintained a practice in the City of Kennett, Missouri.  He had several years experience in the construction was  the owner of commercial and rental property in the City and in nearby communities.                              16.

On information and belief, Victor Mode was the Kennett Code Enforcement Officer who identified  Plaintiff's houses dangerous building and therefore a nuisance

subject to demolition.

17.

On information and belief, it was the practice of Mode to routinely issue notices to property owners simply informing them that their properties had been condemned as dangerous structures under the Kennett City Code and ordering them to repair or demolish their houses within 30 days of receipt of the notice. No additional facts are included in his order or notice.

18.

The notice did not contain a statement of the any facts upon which Mode based his order nor did it specify what repairs were to be made.

19.

On January 20, 2016, Defendant Mode notified Plaintiff that his property located at 1628 Wimberly St. and 509 South Vandeventer had been condemned by the City and he had 30 days to "commence repair, or demolition and cleanup." Notices regarding the properties located at 301 and 305 Lelia were issued to Plaintiff's predecessor in title the same date.

20.

On information and belief, Mode reported to the Committee his orders to commence repairs or demolish the houses had not been complied within 30 of receipt

of notice.

21.

After it received Mode's report, the Public Safety Committee, acting in its capacity as Building Commissioner, on March 7, 2016 sent letters to Plaintiff that a hearing would be held on April 25, 2016 relating to the demolition of the houses.

23.

On April 25, 2016, the Public Safety Committee held a public hearing on houses to be demolished. Among the properties were the four properties at issue in this action. The Committee gave Plaintiff three months to repair or remodel the house at 1628 Wimberly. It also extended the time for three months to make repairs to 301 and 305 Wimberly and required Plaintiff to demolish the house at 509 S. Vandeventer. The Committee did not issue a written order stating the factual basis for its action as required by §67.410 R.S.Mo. and the City's Building Code.

24.

During the April 25th hearing, the Committee did not receive any evidence or make any written findings of fact stating the conditions or defects that made the property unsafe, a dangerous building, a nuisance, and subject to demolition or repair.

25.

On July 25, 2016, the Committee again met to address homes that need to be

town down.  Among those properties were Plaintiff's four houses.  Plainitff objected that the demolition proceedings were illegal under the Missouri Constitution, state statutes, and the City's own ordinances, as well as the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Plaintiff asserted that the City had failed to identify specifics facts or conditions that required repairs or justified demolition.  Chairman Weatherwax went so far as to state that the City was not going to give Plaintiffs a list of the problems with the houses.

26.

During the July 25th meeting, the Committee stated the house at 509 South Vandeventer was to be torn down.  It extended the time for repairing or remodeling the other three houses for three months.

27.

The Committee did not make any written findings of fact or issue an order with findings of fact regarding repairs or demolition.

28.

On November 10, 2016, the Committee notified Plaintiff of a hearing to be held on November 22, 2016 for the demolition of all four properties.  Again, the Notice did not specify the factual basis or any conditions supporting the allegations that the properties constituted unsafe or dangerous buildings and should be demolished.

29.

On November 22, 2016, the Committee conducted a hearing at which the City's sole witness was Defendant Mode. Plaintiff objected that the City had not provided factual information upon which Defendant Mode based his decision and the basis for his opinion regarding demolition.

30.

The Committee unanimously voted to demolish the two houses located at 1628 Wimberly and 509 S. Vandeventer. It concluded that the houses at 301 and 305 Leila Drive could be repaired and remodeled and extended the time for completing the remodeling and repairs of the houses an additional 90 days.

31.

On November 10, 2016, Plaintiffs had requested a building permit from Defendant Mode for 301 and 305 Leila Drive. At the time of the November 22, 2016 hearing, Mode had not issued a building permit for remodeling the houses and at no time thereafter did he inform Plaintiffs of the status of the request or provide them a building permit to make the repairs.

32.

In 2017, the Committee scheduled a further hearing for April 6, 2017 for the demolition of Plaintiffs' two remaining houses. On April 4, 2017, Plaintiff wrote to

Mayor Hancock informing him that the proceeding for demolition of his properties by Mode and the Public Safety Committee acting as Building Commission were illegal under the Fourteenth Amendment, the clearly establishes mandates of the Missouri Constitution, Missouri statutes, and the City's own ordinances to property maintenance and demolition. The letter further stated any further actions by the City officials would subject each of them to personal liability.

33.

Despite Plaintiff's notice to the mayor, on information and belief, the mayor discussed Plaintiff's letter with the members of the Committee and Mode and they agreed to proceed with the demolition of Plaintiff's houses.

34.

On April 7, 2017, the day after the Committee meeting, Defendant Mode issued a letter to Plaintiff Jim Bruce for each house informing him that the City was taking bids to demolish the structures (houses) and to remove all personal items from the properties.

35.

On April 10, 2017, Mode sent Plaintiff two notices relating to 1628 Wimberly and 301 Leila further informing him that the cost of demolition would be accessed as a lien against the properties.

-13-

36.

On May 31, 2017, David Ross, president of Ross Farms Trucking, Inc., called Plaintiff and informed him that he had been awarded the contract for demolishing Plaintiffs' four houses. Plaintiff informed him that the actions of the City were illegal and asked Ross to postpone the demolition.

37.

On June 2, 2017, Plaintiff spoke with Ross who informed him that he had spoken with Defendant Mode about the lawfulness of the demolition and that Mode expressly directed him to proceed with the demolition despite the likelihood of litigation.

38.

The same day, June 2, 2017, Plaintiff received a call from a neighbor that the City was demolishing the two houses at 301 and 305 Lelia Dr.

39.

On June 6, 2017, Plaintiff wrote a letter to Ross in which he stated that the actions by the city in demolishing his property was illegal under state and federal law. He also attached a copy of the his letter of April 4, 2017 to Mayor Hancock. He requested Ross to suspend any further action to demolish the house at 1628 Wimberly.

40.

On information and belief, the other two houses, 1628 Wimberly and 509 S. Vandeventer, were demolished over the week June following June 6, 2017 .

41.

At no time did the City or the Public Safety Committee acting as the Building Commission issue an order making specific findings of fact based on competent and substantial evidence which showed the houses to be a nuisance and detrimental to the public health, safety, or welfare and ordering the houses to be closed, secured, remodeled, repaired or demolished.

42.

Neither the Committee nor any other official of the City ever provided Plaintiffs a copy of any written orders for demolition of the properties.

43.

The house at 1628 Wimberly was subsequently demolished at the direction of Mode.

44.

Plaintiffs were never provided a copy of the Committee's written orders to demolish their houses. Had they been timely provided a written copy of the order, they could have appealed the action under §536.100-.140 R.S.Mo.

45.

On June 15th Defendant Hancock and the  the city clerk certified a Special Tax Bill and filed it with the City Collector for the cost for demolition for Plaintiff's four properties and filed it. On June 16, 2017 the certified Special Tax Bill was filed with the Dunklin County Recorder of Deeds as a lien against the four properties involved. The amounts stated for each property were as follows:

> 1628 Wimberly. . . . . . . . . . . . . . . .$4,100.00
> 509 Vandeventer. . . . . . . . . . . . . . .$2,950.00
> 301 Lelia. . . . . . . . . . . . . . . . . . . . .$3,550.00
> 305 Lelia. . . . . . . . . . . . . . . . . . . . .$2,950.00
> _____Total. . . .$13,550.00

The Special Tax Bill for each property  provided that they would bear interest at the rate of 8% after 60 days from June 15, 2017.

46.

On information and belief, the City of Kennett, Defendant Mode, and the individual members of the Public Safety Committee systematically followed the same practices regarding the contents and service of notices and orders in all other cases. The City assessed Special Tax Bills for the costs of demolition against all property owners whose houses, buildings, or structures were condemned and demolished and filed them with the recorder of deeds as liens against the properties.

## COUNT  I.

(Civil Rights 42 U.S.C. §1983)

-16-

47.

Plaintiffs adopt and realleges the allegations contained in the Paragraphs 1-46 above.

48.

This cause of action is brought pursuant to 42 U. S. C. §1983 and §1988 for declaratory judgment, injunctive relief, compensatory and punitive damages, prejudgment interest, and attorney fees and expenses for the actions of Defendants heretofore set out in depriving Plaintiffs of their rights secured by the Fourteenth Amendments to the Constitution of the United States.

49.

At all times material to this action, the Defendants acted under color of law, office, ordinance, custom, or usage of the State of Missouri, and the ordinances of the City Kennett, Missouri; Defendant Ross Farms Trucking, Inc. acted jointly and in concert with Defendant City of Kennett and municipal officers and employees in causing the deprivations of Plaintiffs' federally protected rights and of his thr destruction of their property.

50.

At all times material to this action Defendants Mode, the Code Enforcement Officer and Building Officer for the City of Kennett.  Hancock was at all times material to this action the Mayor and ex-officio member the Public Safety Committee

of the Kennett City Council acting as Building Commissioner. He appointed or reappointed the members of the Committee.

51.

Hancock had a duty as mayor under §77.350 to enforce the laws and ordinances for the governance of the city, supervise the subordinate officers and address any neglect of duty or violation of the law on their part.

52.

Defendant Hancock had personal knowledge of the actions of the members of the Committee and  breached his duties by his willful disregard of his duties in failing to act to prevent the members of the Committee from unlawfully depriving Plaintiffs of their constitutional rights to due process of law, illegally usurping the powers of the executive branch of city government, failing to adhere the prescribed statutory procedures and requirements for demolition of buildings (See: §67.410 R.S.Mo.), and wrongfully demolishing Plaintiff's houses (§67.450 R.S.Mo.).

53.

Defendants Weatherwax, Wheeler, Collins, Freeman and Wilson were members of the City Council and as such were designate by the Kennett City Code as the City's Building Commissioner.  All actions taken by them in their capacity as Building Commissioner, including ordering the demolition of houses and buildings, were

-18-

unauthorized by law and wholly outside their jurisdiction under the state constitution. All their actions, including the destruction of Plaintiff's house, taken as the City's Building Commissioner were void and without effect.

54.

Article 2, Section 1 of the Missouri Constitution states:

> The powers of government shall be divided into three distinct departments – the legislative, executive and judicial – each of which shall be confined to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

55.

The members of Kennett City were charged by statute with the exercise of legislative powers for enacting ordinances. Once they enacted ordinances or resolutions, their powers were exhausted and the exercise of the powers for enforcing the ordinance was confined to the executive branch. The duties of the office of Building Commissioner were executive in character and could not be exercised by Council members on the Public Safety Committee. To the extent that they attempted to do so their actions constituted a usurpation of executive power and were void as a matter of law. Their orders to demolish Plaintiffs' houses were illegal and constituted

-19-

wrongful demolition. See: *State Auditor v. Joint Committee on Legislative Research*, 956 S.W. 2d 228 (Mo. 1997).

56.

In addition, the order of demolition and the resulting destruction of Plaintiffs' houses deprived them of their due process rights to a full and adequate pre-deprivation hearing under the Fourteenth Amendment in that they were not given proper and sufficient notice required to meet the constitutional demands of due process under the federal constitution or the procedures set out in §67.410 R.S.Mo. and the City Code, §535.040-535.080.

57.

The declarations of nuisance and order issued by Mode were so indefinite, vague, non-specific, and lacking as to any factual basis for the actions taken that they fail to pass muster under the due process clause of the Fourteenth Amendment to the Constitution of the United States and were void as a matter of law. *McKinney as Next Friend of K.P. v. Huntsville School District, 350 F. Supp. 350 F. Supp. 3d. 757, 769, (W.D. Ark. 2018).*

58.

Mode's declaration and order was insufficient to withstand a due process challenge inasmuch as it made only conclusory allegations, failed to specify any

specific repairs to be made, and failed to include any facts that would support a finding the buildings or structures were dangerous, should be condemned, constituted a nuisance, were subject to demolition, or posed a threat to the public health, safety, and welfare.

59.

An essential function of the notice for purposes of due process is to apprise the recipient of the nature of the proposed action and the facts that caused Mode to determine the structure was subject to demolition and enable the property owner to prepare a defense and effectively address them in a pre-deprivation hearing. Notice without reference of the underlying facts is no notice at all.  See:  *Gonzales v. U.S., 348 U.S. 407, 413-414, fn. 5,* "The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit arguments implies that opportunity; otherwise the right would be a barren one").

60.

Fundamental to the concept fair pre-deprivation hearing is the requirement that it be conducted by a fair and impartial hearing officer or decision-maker with the actual authority to decide the matter or grant relief.  In this case, the Public Safety Committee lacked the authority to conduct a hearing or make any decision.

61.

Committee members were fundamentally disqualified by the Missouri Constitution from acting in the executive capacity as Building Commissioner, conducting hearings, ordering the demolition of any building or structure, or granting any other relief. Consequently, the hearing was neither fair or meaningful where the Committee was prohibited as a matter of law from taking any action in the matter before it.

62.

The joint actions of Defendants violated Plaintiffs' clearly established rights under both state law and the Fourteenth Amendments to the Constitution of the United States by depriving him of property, the benefits it provided, and future value and income derived therefrom.

63.

The actions of Defendants were intentional, outrageous, and showed a deliberate indifference to Plaintiff's rights thereby making an award of punitive damages against them appropriate.

64.

The City and its officials, in their individual and official capacities, have forfeited any claim of qualified immunity to monetary damages, where their actions

violated clearly established law at the time in that they acted completely without jurisdiction denying Plaintiff his rights to due process of law and causing the demolition of his house.  Their actions were void because the were taken in the complete absence of all jurisdiction. *State Auditor v. Joint Committee on Legislative Research*, 956 S.W. 2d 228 (Mo. 1997); Also see: *McNeill v. Kansas City,* 459 S.W. 3d 509 (Mo. App. 2015) (City officials liable for wrongful demolition where they failed to make written findings of fact in the order for demolition setting forth specific conditions or defects complained of and extent to which the were detrimental to life, health, property, safety, or welfare).

65.

As a direct and proximate result of the Defendants' willful and intentional breach of the duties, Plaintiffs have been deprived of his right to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States, the value and anticipated future earning it would reasonably generate and has been taxed with the cost of the unlawful demolition.

66.

As a direct and proximate result of the joint actions of Defendants, Plaintiff has suffered financial loss and damages, including but not limited to the destruction of his property, the lost of value of his property, the lost future rental income, loss of

increased valuation from improvements, the inability to sell the lot, the imposition of a lien against the property for the cost of demolition, the cost of attorney fees attorney and expenses of litigation, and loss of pre-judgment interest.

67.

Since all actions of the Building Commissioner were void, Mode's submission of the costs of demolition for assessment of a special tax bill, were likewise void and unenforceable against Plaintiffs and the members of their class.

COUNT II.

(Missouri Constitutional and Statutory Violations)

68.

Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1-67 above.

69.

The actions and inactions of the City, mayor, and members of the Committee causing the demolition of Plaintiffs' houses were illegal and void under Article II, Section 1 of the Missouri Constitution.

70.

Section 67.450 R.S.Mo. waives a city's sovereign immunity from monetary damages when any building is (1) wrongfully demolished or is (2) demolished without

adhering to the procedures provided in §§67.400-67.450 and make the city liable for the resulting loss and damages to the property owner.

71.

In *McNeill v. Kansas City, supra.* and *Woodson v. City of Kansas City,* 80 S.W. 3d 6 (Mo. App. 2002), the courts found the demolition orders by the city's code enforcement division were void and entered in the absence of all jurisdiction where the city failed to comply with the statutory requirements by including in its demolition order adequate written findings of the specific conditions or defects that made the buildings dangerous based on §67.410 and the municipal ordinances and codes. Also See: §536.090 R.S.Mo.

72.

The Commission in his case ordered the demolition of Plaintiffs' houses without issuing any written orders, making findings of fact and conclusions of law, and immediately serving notice of the order on Plaintiffs. Had it done so, Plaintiffs could have sought review within 30 days after receipt of it the written order before the Administrative Hearings Commission §536.100-140; *cf.* §536.090 (requires the city to give "immediate notice in writing of its decision by delivering such notice to each party and furnish a copy of the decision, order, and findings of fact and conclusions of law to a property owner).

-25-

73.

The Kennett City Code §535.060 requires the Code Enforcement to notify the owners of any building he finds to be a dangerous structure and to issue notice of such defect in writing.  Subsection 5 states that the notice provided to the owner shall include "a *statement of particulars* [Emphasis Supplied] that make the building or structure a dangerous building." Section 535.080.2 pertains to the hearing by the Building Commissioner. It provides for a hearing to determine why a building reported to be dangerous should not be repaired, vacated or demolished "in accordance with the statement of particulars set forth in the Code Enforcement/Property Maintenance Officer's notice as provided therein." The provisions in the Code pertaining to the notice of the Code Enforcement Officer make clear that the factual basis for his determination must be included in his notice to satisfy the statute, the city code, and the due process clauses of the state and federal constitutions. See: Article I, Section 10 , Missouri Constitution.

74.

The City through its officers and agents have failed to comply with the procedures for providing adequate notice to Plaintiffs got purposes of a fair hearing. The hearing itself was not "adequate" or "meaningful" since it was conducted without compliance with the constitutional and statutory requirements for giving proper

notice.  Perhaps even more significant is the fact that the City Council members who acted as the Building Commissioner were disqualified by the Missouri Constitution from exercising powers reserved to the executive branch of city government and enforcing the municipal codes and therefore had no jurisdiction for conducting a hearings or ordering the repairs or demolition of any structure.  The notice, hearing and Committee's orders were defective and resulted in the wrongful demolition of Plaintiffs' houses and the assessment of $13,550.00 in illegal and void special tax liens against the property.

75.

As a direct and proximate result of the actions caused by Defendants, Plaintiffs have been deprived of the right to due process of law to which they were entitled under state law and the Missouri Constitution, and as a result the City is responsible for the wrongfully demolished the houses and its willful and intentional failure to adhere to the statutory procedures found at §67.400 -67.450. Plaintiffs suffered loss of the value of the houses, the value of f improvements,  and the anticipated future value and income the houses would reasonably generate in the future.  They have also suffered financial damage as a result of the assessment of the special tax bill for the cost of the unlawful demolition.

76.

As a direct and proximate result of the joint actions of Defendants, Plaintiff has suffered financial loss and damages, including but not limited to the destruction of his property, the lost of value of his property, the lost future rental income, loss of increased valuation from improvements, the inability to sell the lot, the imposition of a lien against the property for the cost of demolition, the cost of attorney fees, expenses of litigation, and reasonable compensation for the delay in payment for the wrongful demolition in the form of pre-judgment interest.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of their class pray this court grant the following relief:

1.  Under Count I enter an order pursuant to Rule 23(b) (1-2) F.R.Civ. P that this action be maintained as a class action for the purpose of securing declaratory and injunctive relief.

2.  Under Count I enter judgment in favor of Plaintiffs and against all Defendants jointly and severally in their individual and official capacities pursuant to 42 U.S.C.§1983 for the deprivation of his constitutional right to due process of law under the Fourteenth Amendment and for the unlawful demolition of his property in the

amount of $500,000 as compensatory damages and $1,000,000 as punitive damages together with an prejudgment interest, and an award of reasonable attorney fees and litigation costs and expenses pursuant to 42 U.S.C. §1988.

3.  Under Count I and II to enter declaratory and injunctive relief against the City of Kennett declaring the special tax bill filed against Plaintiffs' property to be unlawful and void: and to enter injunctive relief requiring the City of Kennett to cancel, void, set aside, and expunge the special tax lien and any interest or charges thereon, and to correct all filings with the Dunklin County Recorder, and city and county tax collectors, or any other entities to show such liens to be null and void.

4.  Under Counts I and II to enter declaratory and injunctive relief against the City of Kennett as follows: declare the special tax bill assessed against the property belonging to members of Plaintiffs' class to be unlawful and void; declare the liens therefor to have no force and effect; and to enter injunctive relief requiring the City of Kennett to cancel, release,set aside, void and expunge the special tax bill and anysuch liens filed with the Dunklin County Recorder, the City and county tax collectors; to award counsel for Plaintiff a reasonable attorney fee for services on behalf of the members of Plaintiff's class.

5.  Under Count II enter judgment in favor of Plaintiff and against all Defendants

jointly and severally for wrongful demolition of his houses and violation of his statutory rights without adhering to the procedures provided in Section 67.400-67.450 R.S.Mo.in the amount of $500,000 as compensatory damages and $1,000,000 as punitive damages together with prejudgment interest, and an award of reasonable attorney fees.

6.   Under Counts I and II, grant Plaintiff prejudgment interest on all claims and an award of reasonable attorney fees and expenses of litigation pursuant to 42 U.S.C. §1988 as to Count I.

7.   Grant Plaintiff such other and further relief as is just and proper.

s/ Jim R. Bruce_____
Jim R. Bruce,#29,673
P.O. Box 37
Kennett, MO 63857
Telephone: (573) 888-9696
